IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

TOMMIE LEE HOWARD,           *
                             *
     Plaintiff,              *
                             *
vs.                          *    Civil Action No. 2:13-00140-B
                             *
CAROLYN W. COLVIN,           *
Commissioner of Social Security,*
                             *
     Defendant.              *

ORDER

Plaintiff Tommie Lee Howard (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. On April 15, 2014, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 13). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   **Procedural History**

Plaintiff protectively filed an application for a period of

disability and disability insurance benefits income on September 8, 2009. (Doc. 15 at 1; Tr. 105-08). Plaintiff alleges that he has been disabled since June 19, 2009 due to a back injury, carpal tunnel syndrome, feet problems, arthritis in his knees, and high cholesterol. (Tr. 144). Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Jerome L. Mumford (hereinafter "ALJ") on May 9, 2011. The hearing was attended by Plaintiff, his attorney, and a vocational expert (hereinafter "VE"). (Id., at 34). On June 20, 2011, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id., at 13-26). The Appeals Council denied Plaintiff's request for review on January 25, 2013. (Id., at 1-3). Thus, the ALJ's decision dated June 20, 2011 became the final decision of the Commissioner. The parties waived oral argument (Docs. 14, 16), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. **Issue on Appeal**

**Whether substantial evidence supports the ALJ's RFC assessment.**

## III. **Factual Background**

Plaintiff was born on November 25, 1955, and was 55 years of age at the time of his administrative hearing on September

16, 2010. (Tr. 49). Plaintiff testified at the hearing that he graduated from high school and worked for the city of Demopolis, Alabama for 26 years. According to Plaintiff, during the last 15 - 18 years with the city, he worked as a street sweeper. (Id., at 33, 36). Plaintiff testified that he retired from the city in January 2009, and although he found another job, he quit the job in June 2009 because he hurt his back in April 2009. (Id., at 50). Plaintiff testified that on a regular day, his lower back pain is an eight (8) out of ten (10) on the pain scale and it radiates down to his left leg in varying degrees of severity. (Id., at 37-38). He also testified that he cannot perform any work, including a job that would allow him to sit or stand even without any lifting due to the pain in his back. (Id., at 42-43).

On Plaintiff's function report, he reported that his daily activities include taking care of his personal needs and grooming, watching television, feeding his dogs, raising his chickens, and watching the news. (Id., at 135, 139). He further reported that he has no limitations with regard to his personal care, that he prepares breakfast, sandwiches, and frozen dinners, that he washes dishes daily, and that he drives a car. (Id., at 136-37). Plaintiff also reported that he is able to lift up to 45 – 50 pounds. (Id., at 140).

In addition to the foregoing facts, the ALJ made the

following relevant findings:

> **3. The claimant has the severe impairments of back pain and carpal tunnel syndrome (20 CFR 404.1520(c))[1].**
>
> The claimant's prior treatment history reflects nerve conduction studies from 2008 that revealed findings indicative of mild right ulnar neuropathy across the elbow, compatible with but not indicative of right medial neuropathy at the wrist. The claimant subsequently underwent right endoscopic carpal tunnel release and right ring finger trigger release to address ongoing complaints of right hand pain and paresthesia. No surgical complications were indicated…
>
> Medical records for DCH Medical Center beginning in May 2009 reflect the claimant was treated for low back pain subsequent to injuring his back while cutting/lifting firewood in April 2009. The treatment notes indicated the claimant's pain level was increasing and remained unabated with pain medications. An x-ray of the lumbar spine taken May 2, 2009 revealed straitening of the lumbar spine was present. There was no evidence of fracture of subluxation. Disc space and intervertebral body heights were normal. The claimant underwent an intrathecal injection/lumbar myelogram followed by a CT scan in July 2009. Findings from the CT revealed the claimant had a left-sided disc bulge or protrusion, which filled the left neural foramina resulting in the crowding of the nerve root as it exited the neural foramen. No spinal stenosis was identified. The remainder of the study demonstrated mild disc bulge in the lower lumbar spine without evidence of foraminal stenosis or spinal stenosis. X-rays of the lumbar

---

[1] The ALJ also determined that Plaintiff has not engaged in substantial gainful activity since June 19, 2009, and that he does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., at 16, 18).

spine also taken in July 2009 revealed no acute abnormality. The claimant's diagnosis included low back pain, left lower extremity radiculitis, L4-5, L5-S1 disc abnormality, and failure of conservative care…

Records from the SpineCare Center reflect the claimant was referred for evaluation, testing and consideration of injection therapy on May 5, 2009 in relation to complaints of low back pain subsequent to cutting/lifting firewood in April 2009. The claimant described his pain as aching, stinging, sharp, severe, and constant in nature. On a pain scale of 1 to 10, his pain level was rated as an 8/10 and at a 10/10 at its worst. The report noted the claimant experienced pain radiation into the lateral aspect of the left lower extremity. The objective findings of the report showed his lumbar examination was normal to inspection. Range of motion testing revealed he experienced increased pain with flexion at 45 degrees. There was palpation tenderness in the mid-lumbosacral region and left paraspinous muscles with increased tone. Examination of the bilateral upper and lower extremities revealed no atrophy or edema. His hand grasp was 5/5. Strait leg raise was negative but with increased pain to the low back at 90 degrees. Muscle strength was 4/5 in the left leg and 5/5 in the right leg. The diagnostic impressions of the claimant included low back pain; left extremity radiculitis; probable lumbar disc herniation; and failure of conservative treatment. The claimant under a L4-5 and L5-S1 transforaminal epidural injection with fluoroscopy on May 14, 2009 and a caudal epidural injection under fluoroscopy with intraoperative epidurogram on May 28, 2009 without complication. Treatment notes dated May 29, 2009 reflect the claimant presented with complaint of a constant dull aching pain in his left lower extremity radiating down to his left ankle as well as low back pain subsequent to lifting a heavy log firewood in April 2009. The treatment note indicates the claimant stated his back pain had improved. His pain level at the time was noted at 5/10 and had ranged from a level 2/10 to a level 8/10 during a two-week period. He reported his primary problems involved bending and

lifting. He also reported he had received previous treatment for prior back problems. He reported taking medication intermittently. His treatment plan consisted of therapeutic exercises and modalities for pain control…

Treatment records from July 2009 reflect the claimant presented for a lumbar CT myelogram. He complained of ongoing low back pain since April 2009. The claimant's pain was described as aching, stinging, sharp, severe, and constant in nature. He had also developed left leg numbness. His pain level was rated at an 8/10 and at a level 10/10 when at its worst. The treatment records indicated the claimant had previously received epidural injection therapy. Findings upon physical examination revealed a normal lumbar examination. The claimant's range of motion showed increased pain with flexion, lying to sitting. The bilateral lower extremities were without edema, erythema or atrophy. Sensation was normal and straight leg raising was negative but caused increased pain of the low back at 90 degrees. Muscle strength was 4/5 in the left leg and 5/5 in the right leg. Diagnostic impression of the claimant included low back pain; left extremity radiculitis; L4-L5 left foraminal disc protrusion resulting in impingement of the exiting left L4 nerve; at L5-S1 left paracentral/foraminal annular tear likely with a mild bulge resulting in mild left neural foraminal narrowing; and a failure of conservative treatment. The claimant received Toradol and Robaxin for muscle spasms and pain…

An initial office visit treatment record from West Alabama Neurosurgery dated August 5, 2009 reflects the claimant presented with a history of back and leg discomfort that had been treated with a combination of epidurals and physical therapy. The record noted, however, the claimant's symptoms had shown improvement with the combination therapies and that the claimant reported he felt better. He stated he only rarely experienced leg discomfort and some paresthesia and that he was not taking any narcotics or prescription medications. The treatment record included an assessment of the claimant's MRI which revealed a foraminal disc

bulge at L4-5 with some superior migration abutting the LS nerve root in the neural foramen. A physical examination summary showed the claimant had 5/5 strength with hip flexion. His deep tendon reflexes were symmetric at the knees. Straight leg raising was negative and no obvious sensory abnormalities were observed. Given how well the claimant was doing, a continued conservative course of treatment was recommended rather than surgery…

…

(Id., at 16-17). With respect to Plaintiff's RFC, the ALJ stated as follows:

**After careful consideration of the entire record, I find that the claimant has the residual capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant is limited to occasional climbing, bending and left lower extremity pushing/pulling; and no unrestricted heights.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

I have reviewed the claimant's subjective complaints in accordance with the guidelines provided by Social Security Ruling 96-7p. I have also taken into consideration the controlling case law in the Eleventh Circuit regarding the standard used to assess subjective complaints of pain and other subjective symptoms. This standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can reasonably be expect to give rise to

the alleged pain." <u>Holt v. Sullivan</u>, 921 F.2d 1221 (11th Cir. 1991).

…

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expect to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's alleged symptoms and physical limitations, I do not consider them to be wholly credible. Although the claimant testified he experienced disabling limitations due to physical impairments, the totality of the evidentiary record does not support those allegations. While the clinical findings of the medical record reflect the claimant experiences some limitations due to his physical impairments, the preponderance of the evidence does not support a conclusion that the claimant's limitations are as severe as alleged or that his impairments are disabling to the extent he is unable to perform all substantial gainful activity. The claimant reported in his Adult Function Report…he required no assistance with his personal care, he was able to go outside daily, prepare something to eat, wash dishes, make the bed, take care of pet chickens and dogs, watch television, walk, and drive a car.[ ]

Moreover, claimant's statements are not fully credible in the light of the medical history, the medical reports of the treating physicians, and the clinical findings made on examination. In this case, the overall findings upon physical examination reflect the claimant had a normal bipedal gate. He stood with a right lateral shift that was easily corrected manually. He demonstrated active range of motion of the lumbar spine to have a minimal restriction for flexion. Transitional motions were easily done and his neurologic status was intact. There was no significant edema,

erythema, atrophy or sensory deficits noted. To the
extent the claimant alleges problems with walking,
there was no indication in the evidentiary record
the claimant required an assistive device for
ambulation. Further, the descriptions of the
symptoms and limitations which the claimant has
provided throughout the record have generally been
vague, unpersuasive, and somewhat contradictory.
Although the claimant testified he underwent
surgery on his right hand he could not remember
when it occurred. He could not remember when he
underwent eye surgery. He initially testified the
surgery was on his left eye and then later
testified the surgery was performed on his right
eye. Consideration of the record shows the
treatment received for his alleged disabling
impairments have been essentially routine and/or
conservative in nature and not reflective of the
type of care generally expected for a totally
disabled individual. In fact, the claimant's
treating physician[] recommended against surgery
and continuances with physical therapy. Given the
claimant's allegations of disabling symptoms, it is
reasonable to expect some indication in the
treatment records of some ongoing restrictions
placed on the claimant by a treating doctor;
however, a review of the evidentiary record in this
case reveals no such restrictions recommended by a
treating doctor that would preclude the performance
of substantial gainful activity. Thus, I have
considered the claimant's subjective allegations to
the fullest extent possible given the objective
medical evidence in the record and find that no
treating physician has placed any restrictions on
the claimant inconsistent with the above residual
functional capacity…

(Id., at 20-23).

The ALJ also discussed the weight he assigned to the
opinions of Plaintiff's treating physicians and his reasons for
doing so. He explained:

As for the opinion evidence, and in light of the
documentary record[,] I assign persuasive weight to

> the opinions of the claimant's treating physicians.
> I take note that none of the treatment records of
> the claimant's treating physicians indicated that
> the claimant experienced pain or other subjective
> symptomatology to such a degree as to render him
> totally disabled, and there are no treatment notes
> that placed such significant exertional, postural,
> or environmental restriction on him that would
> preclude all forms of substantial gainful activity…
> Moreover, the objective medical opinions provided
> are not inconsistent with the residual functional
> capacity discussed herein.

(Id., at 24).

Finally, the ALJ relied upon the VE's testimony and concluded that Plaintiff is not capable of performing his past work as a street sweeper. (Id., at 24). Consistent with the VE's testimony, the ALJ concluded that that considering Plaintiff's residual functional capacity for a reduced range of medium work, as well as his age, education, and work experience, there are other jobs existing in the national economy that Plaintiff is able to perform, such as grocery bagger, hand packer, and deliverer. (Id., at 25-26). Thus, the ALJ concluded that Plaintiff is not disabled. (Id., at 26).

## IV.  Analysis

### A.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to

determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

B.  **Discussion**

    An individual who applies for Social Security disability

_____

[2] This Court's review of the Commissioner's application of legal principles is plenary. <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[3] 20 C.F.R.

---

[3] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v.

12

§§ 404.1520, 416.920.

In this case, Plaintiff challenges the ALJ's RFC assessment and argues that the record is devoid of any RFC assessment from an examining physician. He further contends that the Commissioner's decision denying benefits should be reversed because the ALJ failed to include a function-by-function assessment in his RFC assessment. (Doc. 10 at 4-6). In response, the Commissioner contends that the ALJ's RFC determination is supported by substantial record evidence, including the functional limitation report that Plaintiff prepared. The Commissioner also contends that the ALJ's RFC determination encompasses his function-by-function assessment as he specifically incorporated the statutory definition of medium work in his RFC finding; thus, he made implicit findings regarding Plaintiff's ability to lift, carry, sit, stand, or walk. (Doc. 11 at 6-12).

An administrative hearing before an ALJ is not adversarial in nature. Thus, it is well-established that a claimant bears the burden of proving disability and for producing evidence in support of his claim while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); Ingram v. Comm'r of SSA, 496

_____

Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

F.3d 1253, 1269 (11th Cir. 2007). This duty to develop the record exists even when the claimant is represented by counsel. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995). In fulfilling the duty to conduct a full and fair record, the ALJ is not required to order a consultative examination unless the record establishes that such is necessary to enable the ALJ to render a decision. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988) (the ALJ is not required to order a consultative examination and has discretion to order such an exam only when necessary); see also Ingram, 496 F.3d at 1269 ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."); Good v. Astrue, 240 Fed. App'x 399, 404 (11th Cir. 2007) (rejecting claim that ALJ reversibly erred in failing to order an additional consultative examination because no physician had recommended an additional consultation and the record contained sufficient evidence to permit the ALJ's RFC determination).

The RFC is a measure of what a claimant can do despite his credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant

evidence of a claimant's remaining ability to work despite his impairments. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). An ALJ's RFC determination necessarily must be supported by substantial evidence.

Based upon a review of the record, the undersigned finds that Plaintiff's contention that the ALJ lacked sufficient evidence upon which to make an informed decision regarding Plaintiff's limitations – due to the absence of a consultative examination – is incorrect. The ALJ had sufficient evidence to accurately assess Plaintiff's impairments. As outlined *supra*, the ALJ provided a thorough analysis of Plaintiff's medical treatment, including the treatment Plaintiff received from Drs. Robidoux, Shepphard, Spruill, and Buckley. The ALJ highlighted the fact that none of Plaintiff's treating physicians ever opinioned that Plaintiff was disabled nor did they place any limitations on Plaintiff greater than or at odds with the RFC assessment.

Further, as noted by the ALJ, when Plaintiff was examined at West Alabama Spine in August 2009, only three months after his April 2009 back injury, he reported that he "fe[lt] much better", that he only rarely experienced leg discomfort and paresthesia, and that he was no longer taking any narcotics or

prescription medication. Upon observation, Plaintiff's straight leg raising was negative and no obvious sensory abnormalities were observed. (Id., at 213). Dr. McKenzie recommended that Plaintiff continue with the conservative treatment that he had been receiving, and opined that surgery would not be of significant benefit to Plaintiff unless his pain were to "recur with vengeance". (Id., at 213). The record contains no evidence that Plaintiff ever sought further treatment for his back pain.

Additionally, the record contains the results of a number of X-rays, CT scans, and MRIs, none of which identified any significant problems that required more than conservative treatment and physical therapy, except Plaintiff's 2008 right hand surgery. (Id., at 213). The ALJ also had the benefit of Plaintiff's subjective account of his limitations, including his written function report. (Id., at 135, 139)[4].

While Plaintiff challenges the ALJ's determination that he is able to meet the statutory exertional requirements of medium work, which is the ability to lift no more than 50 pounds at a

---

[4] When determining a claimant's RFC assessment, the ALJ is permitted to rely on any evidence of record, including a claimant's subjective statement, that is supported by the objective medical evidence and the record as a whole. Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (as the finder of fact, the ALJ has a particularly wide latitude to evaluate the credibility of testimony). As required, in this case, the ALJ specifically articulated his reasoning for discrediting the inconsistent portions of Plaintiff's subjective account of his limitations.

time with frequent lifting or carrying of objects weighing up to 25 pounds, – the determination of which Plaintiff contends requires a consultative evaluation – the evidence of record supports the ALJ's RFC determination. Indeed, Plaintiff himself reported that he is able to lift 45 – 50 pounds. (Id., at 140). Additionally, Plaintiff reported and/or testified that on a weekly basis he is able to drive a car, prepare meals, and visit his mother, and on a daily basis, he is able to care for his personal needs, make his bed, go outside, and care for his pet chickens and dogs. (Id., at 53, 35-39). In light of the foregoing, the undersigned finds that the evidence before the ALJ was sufficient to allow him to render an informed decision regarding Plaintiff's limitations; thus, the ALJ was not required to order a consultative examination. Further, it is clear that the ALJ copiously evaluated all of the evidence before him in determining Plaintiff's RFC and concluded that Plaintiff is capable of performing a reduced range of medium work. Thus, the ALJ's findings are supported by substantial evidence of record.

Plaintiff's other assignment of error is that the ALJ failed to include a "function-by-function assessment" in his RFC finding as required by Social Security Ruling 96-8p. (Doc. 10 at 5). In accordance with SSR 96-8p, the "RFC assessment must first identify the individual's functional limitations or

restrictions and assess his...work-related abilities on a
function-by-function basis…. Only after that may RFC be
expressed in terms of the exertional levels of work, sedentary,
light, medium, heavy, and very heavy." SSR 96-8p, at 1.   In
ruling on a function-by-function issue presented to it, a panel
of the Eleventh Circuit provided the following guidance:

> While the ALJ could have been more specific and
> explicit in his findings, he did consider all of
> the evidence and found that it did not support the
> level of disability Freeman claimed.  Only after he
> determined that she failed to carry her burden of
> showing that she had become disabled from
> performing any of her work-related activities did
> he state that she could perform light exertional
> activity.  Therefore, the ALJ complied with SSR 96-
> 8p by considering Freeman's functional limitations
> and restrictions and, only after he found none,
> proceeding to express her residual functional
> limitations in terms of exertional levels.
> Furthermore, the ALJ's analysis of the evidence and
> statement that Freeman could perform light work
> indicated how much work-related activity she could
> perform because "light work requires standing or
> walking, off and on, for a total of approximately 6
> hours of an 8-hour workday." SSR 83-10. The ALJ
> also told the VE that the hypothetical individuals
> they were discussing were limited to light
> exertional activity.  Therefore, the ALJ's
> hypotheticals did have limitations on sitting,
> standing, and walking.  In sum, the ALJ adequately
> analyzed and described Freeman's functional
> capacity.

Freeman v. Barnhart, 220 Fed. App'x 957, 960 (11th Cir.
2007).   The Freeman decision makes clear that "[w]here an ALJ
considers all of the evidence, determines that the claimant is
not disabled, and also poses a hypothetical to a VE which limits

the claimant to a certain level of exertional activity, the Eleventh Circuit [has] found that the ALJ complied with the requirements of SSR 96-8p." Warren v. Astrue, 2010 U.S. Dist. LEXIS 85836, at *18, 2010 WL 3294186 (N.D. Ga. Jul. 14, 2010) (citing Freeman, supra), report and recommendation adopted, 2010 U.S. Dist. LEXIS 85887, 2010 WL 3294182 (N.D. Ga. Aug. 20, 2010); cf. Hall v. Astrue, 2010 U.S. Dist. LEXIS 64704, at *21, 2010 WL 2643565 (S.D. Ala. Jun. 29, 2010) ("In Freeman. . ., the Eleventh Circuit held that an ALJ's failure to 'more specific[ally] and explicit[ly]' set forth his findings with respect to a claimant's 'functional limitations and work-related abilities on a function-by-function basis' is excusable where it is apparent the ALJ did 'consider all of the evidence.'").

In this case, as in Freeman, there is no question that the ALJ could have been more specific and explicit in his findings with respect to Plaintiff's functional limitations and work-related abilities on a function-by-function basis. However, the undersigned finds no reversible error in this regard inasmuch as the ALJ clearly considered all the evidence of record and found that such evidence did not support the level of disability Plaintiff claimed. (Tr. 16-24). Moreover, the ALJ's analysis of the evidence and his specific determination that Plaintiff is capable of performing a reduced range of "medium work as defined in 20 CFR 404.1567(c)" is an implicit indication of the work-

related activities he found Plaintiff capable of performing. This is particularly true given that the ALJ also limited Plaintiff to "occasional climbing, bending and left lower leg extremity pushing/pulling; and no unrestricted heights" based on Plaintiff's medical records. (Id., at 20). Finally, the ALJ proposed a hypothetical to the VE that accurately outlined Plaintiff's RFC for a reduced range of medium work, as well as his age, education, and work experience and VE identified the medium, unskilled jobs of grocery bagger, hand packager, and deliverer as jobs which exists in significant numbers in the national economy that persons with Plaintiff's RFC, age, education and work experience could perform. (Id., at 57-58). Accordingly, like the Eleventh Circuit in Freeman, this Court finds that "the ALJ adequately analyzed and described [Plaintiff's] functional capacity." 220 Fed. App'x at 960. As such, the ALJ's failure to provide a more comprehensive function-by-function assessment of Plaintiff's limitations is harmless. Id.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits income be

**AFFIRMED.**

    **DONE** this **31st** day of **July, 2014.**

                                        **/s/ SONJA F. BIVINS**
                              **UNITED STATES MAGISTRATE JUDGE**